Cameron D. Bordner (CSB No. 236312)
Chad Pace, Esq. (CSB No. 352328)
527 South Arlington Avenue
Reno, NV 89509
Ph: (530) 214-8700
bordner@mobolaw.com
pace@mobolaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TODD MATHER, an individual, TGMA, Inc., a California Corporation doing business as A-FRAME RISING,<br><br>Plaintiffs,<br><br>v.<br><br>KYLE OSBURN, an individual, SUZANNE OSBURN, an individual, OSBURN SOLUTIONS, LLC, a foreign Limited Company, NAUMEC & OSBURN INVESTMENTS, LLC, a foreign limited liability company; SEVENTH DAY DESIGN, LLC, a foreign limited liability company; OSBURN PROPERTIES, LLC, a foreign limited liability company; TRUMBLE INVESTMENTS, LLC, a foreign limited liability company, and DOES 1-100, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1. **Copyright Infringement**<br>2. **Unjust Enrichment**<br>3. **False Designation of Origin**<br>4. **Unfair Competition**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW PLAINTIFFS TODD MATHER and TGMA, Inc., a California Corporation doing business as A-FRAME RISING, by and through undersigned counsel, and for their causes of action allege as follows:

**NATURE OF THE ACTION**

1. This cause of action is for infringement of PLAINTIFF TODD MATHER's federally registered copyright pursuant to 17 U.S.C. § 501.

2. PLAINTIFF TODD MATHER ("MATHER"), through his company, PLAINTIFF

1

TGMA, Inc., a California Corporation doing business as A-FRAME RISING ("AFR"), owns and operates an architecture design business located at 1335 North Lake Blvd, Suite 37, Tahoe City, CA, 96145.

3. MATHER formed AFR on August 22, 2017 and AFR is a corporation in good standing, assigned business entity number 4058376 by the California Secretary of State.

4. Without authorization or permission, Defendants infringed Plaintiffs' intellectual property and copyrighted designs for A-Frame style single family homes.

## **PARTIES**

5. PLAINTIFF TODD MATHER ("MATHER") is an architect operating the business A-FRAME RISING.

6. Upon information and belief, DEFENDANTS KYLE OSBURN and SUZANNE OSBURN (aka Suzanne N. Trumble) are home builders operating under the business OSBURN SOLUTIONS, LLC.

7. Upon information and belief, DEFENDANTS NAUMEC & OSBURN INVESTMENTS, LLC, a foreign limited liability company, LLC; SEVENTH DAY DESIGN, LLC, a foreign limited liability company; OSBURN PROPERTIES, LLC, a foreign limited liability company; TRUMBLE INVESTMENTS, LLC, a foreign limited liability company, OSBURN SOLUTIONS, LLC, a foreign limited liability company are related, affiliated, and interdependent with each other named DEFENDANT. For example,

    a. Individual DEFENDANTS SUZANNE OSBURN and KYLE OSBURN are members and directors of DEFENDANT SEVENTH DAY DESIGN, LLC. SUZANNE OSBURN is the sole employee of SEVENTH DAY DESIGN, LLC.

    b. DEFENDANT KYLE OSBURN is the member/director of DEFENDANT OSBURN SOLUTIONS, LLC, and he is the sole known member of both NAUMEC AND OSBURN INVESTMENTS, LLC and OSBURN PROPERTIES, LLC.

    c. By way of a "correctional deed" recorded on August 12, 2021 as document bearing instrument number 595512, Book 1091, Page 831, individual Defendants KYLE and SUZANNE OSBURN alienated real property commonly known as 875 LOST CEDAR

TRL, BROKEN BOW, Oklahoma, 74728-9072 to DEFENDANT OSBURN SOLUTIONS, LLC.

    d.    Defendants SEVENTH DAY DESIGN, LLC, OSBURN SOLUTIONS, LLC, and OSBURN PROPERTIES, LLC are both located at a single-family dwelling commonly known as 90 Southern Lake Road, Texarkana, Texas 75501-0025 where individual DEFENDANTS KYLE and SUZANNE OSBURN began to reside on April 1, 2020 and continue to reside.

8. Upon information and belief, each Defendant named herein acted as an agent, servant, employee, partner, joint venturer, or representative of each of the other Defendants and acted within the scope of such agency, employment, partnership, joint venture, or representation. Each Defendant is alleged to have ratified, authorized, and/or approved the wrongful conduct of each other Defendant, such that each Defendant is vicariously liable for the wrongful acts, omissions, and misconduct of each other Defendant under applicable principles of vicarious liability, *respondeat superior*, and related doctrines.

9. Furthermore, upon information and belief, each Defendant that is an unnatural person is inadequately insured, failed to maintain adequate corporate records, and operates as an alter ego of one or more of the other Defendants. Each such Defendant failed to respect the separate legal existence of the entity, commingled assets, disregarded corporate formalities, and otherwise acted in a manner consistent with piercing the corporate veil under applicable law. Accordingly, the separate legal identities of these Defendants should not be recognized for purposes of liability, and each such Defendant is liable for the acts and obligations of the others.

10. Additionally, upon information and belief, each Defendant acted in concert, conspired with, aided, abetted, and/or otherwise knowingly participated with each other Defendant in a common scheme or plan to commit the wrongful acts alleged herein. Each Defendant is jointly and severally liable for all such wrongful acts, omissions, and damages resulting therefrom.

11. Plaintiff is informed and believes, and thereon alleges, that Defendants DOES 1 through 100, inclusive, are in some manner legally responsible for the events and damages alleged herein, whether through their own acts or omissions, or by virtue of their relationship with the named Defendants as agents, employees, partners, or alter egos. The true names and capacities of these

3

fictitiously named Defendants are presently unknown to Plaintiff, who will amend this Complaint to allege their true identities and capacities when ascertained. Plaintiff further alleges that DOES 1 through 50 acted in concert with the named Defendants and are jointly and severally liable for the damages alleged herein.

12. DEFENDANTS KYLE OSBURN and SUZANNE OSBURN are home builders operating under the business OSBURN SOLUTIONS, LLC.

## JURISDICTION AND VENUE

13. This is an action arising under the Copyright Act, 17 U.S.C. § 501.

14. Federal District Courts have original jurisdiction of any civil action arising under any Act of Congress relating to copyrights. 28 U.S.C. § 1338(a).

15. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 because it involves federal questions arising under the Federal Copyright Act, as amended, 17 U.S.C. §§ 101 et seq.

16. This Court has supplemental jurisdiction over PLAINTIFFS' state law claims pursuant to 28 U.S.C. § 1367(a), as these claims are so related to the federal claims within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution. PLAINTIFFS' state law claims arise from a common nucleus of operative facts and are thus properly before this Court along with the federal claims.

17. DEFENDANTS are subject to the jurisdiction of this Court pursuant to Nevada's long-arm statute, Nev. Rev. Stat. § 14.065, which permits the exercise of personal jurisdiction to the maximum extent allowed by the Due Process Clause of the United States Constitution. DEFENDANTS established sufficient minimum contacts with the State of Nevada by purposefully directing activities toward Nevada and/or purposefully availing itself of the privilege of conducting business within Nevada, thereby making the exercise of jurisdiction reasonable and consistent with traditional notions of fair play and substantial justice.

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because DEFENDANT OSBURN SOLUTIONS, LLC is subject to personal jurisdiction in this District. Specifically, OSBURN SOLUTIONS, LLC has engaged in substantial activities within this

District and purposefully availed itself of the laws and protections of this District, making venue appropriate for this action.

19. Upon information and belief, DEFENDANTS have consented, and venue is therefore proper in this District.

**BACKGROUND FACTS**

20. MATHER is an individual residing in Placer County, Nevada. He is an architect and co-founder of AFR and has been working closely with clients to provide award-winning architectural services since 1994.

21. On or about November 2016, Mather generated original plans for an A-frame residential home architecture design and in 2019 a home was completed based on the design ("Phoenix Rising").

22. In 2020, Mather created original plans for an A-frame architectural home design based on the ("A-Frame Rising").

23. In 2022, MATHER acquired registered copyrights (U.S. Copyright Nos. VAU001456034[1], VAU001462573[2]) based on the A-Frame Rising design ("Copyright Works").

24. MATHER is the sole author and owner of the Copyright Works.

25. The Copyright Works address the following deficiencies inherent in typical pre-existing A-frame home designs: unusable living space at the floor-ceiling/roof connection; a dark interior with natural light being limited to the end walls; repetitious roof rafters encroaching into the living space, making the livable area appear "smaller"; lack of significant insulation; and uninteresting aesthetics including roofs composed of asphalt shingles.

26. To cure the above deficiencies typical in pre-existing A-frame home designs Copyrighted designs incorporated, among other features: strategically located dormers to bring previously unusable floor and head-space and natural light to the side walls; dominant fenestration at the end walls to further increase natural light; rafters set into the roof structure to allow for insulation and further increase usable space; and cap-and-pan metal roof to provide a continuous pattern when seen from above.

---

[1] Exhibit 1, Registration Certificate for US Copyright No. VAU001456034
[2] Exhibit 2, Registration Certificate for US Copyright No. VAU001462573

27. Since about 2020, AFR has generated significant revenue and goodwill from sale of architectural plans incorporated in the Copyright Works. The product AFR that AFR sells is hereinafter referred to as "AFR Plans."

28. AFR contractually restricts all purchasers of the AFR Plans from using any residential structure as a short-term rental because this restriction upholds the value of the Copyright Works.

29. AFR receives significant benefit and goodwill from the short-term rental restrictions contractually placed on residential structures that are constructed with the AFR Plans.

30. Since at or about 2019, the Copyright Works have been featured in at least nine publications[3], and have received numerous accolades—including local, national and international awards.

31. AFR's "02" design (and other A-Frame designs by AFR) was published to its public-facing website and social media alongside approximately nineteen (19) 3D renderings, two (2) simplified floor plans, and four (4) exterior elevations on December 12, 2020.

32. Upon information and belief, at or about 2022, one or more of DEFENDANTS generated plans for an A-frame structure and built a residential home based on those plans, the structure located on 45 Camp Ranch Rd, Broken Bow, Oklahoma 74728 ("The Okie A").

33. Upon information and belief, since at least 2023, The Okie A has been used as a short term rental.[4]

34. On December 22, 2022, one or more of DEFENDANTS sold The Okie A for $950,000.

35. DEFENDANTS generated plans for a second A-Frame home and built it based on those plans. The home is located at 875 Lost Cedar Trail, Broken Bow, Oklahoma 74728 and is known as "A Dream to Remember."

36. Upon information and belief, Defendants and/or their successors used "A Dream to Remember" as a short-term rental.[5]

37. On or about March 30, 2022, Defendants OSBURN SOLUTIONS, LLC, KYLE OSBURN, and SUZANNE OSBURN sold "A Dream to Remember" via warranty deed bearing instrument

---

[3] *An A-frame for the Ages*, Tahoe Quarterly, March 2021; *At Home in an A-frame*, by Mountain Living, August 19, 2020; *Phoenix Rising: A Modern Lake Tahoe A-Frame Structure*, by Atomic Ranch, November 15, 2020; *An A-frame for the Ages*, by Tahoe Quarterly, March 2021
[4] https://www.theokiea.com/
[5] https://www.vacana.com/vacation-rentals/A-Dream-to-Remember/

number I-2001-603878 and recorded in the McCurtain County, Oklahoma Recorder's Office. Defendants earned a profit from the sale.

38. PLAINTIFFS were made aware of the DEFENDANT'S structures when a client forwarded a posted image of The Okie A structure, the structure in the image being so similar in trade dress to the Copyright Works that the client had mistaken The Okie A for the same design as the Copyright Works.

39. DEFENDANTS infringed and continue to infringe the Copyrights by unlawfully using Copyrights' design features to reproduce and sell substantially similar designs in violation of the United States Copyright Act, 17 U.S.C. §§ 106 *et seq*. (the "Copyright Act").

40. There are two elements needed to establish copyright infringement: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

41. MATHER complied with the Copyright Act and received copyright registrations from the U.S. Copyright Office in accordance with its rules and regulations.

42. MATHER is currently and at all relevant times has been the sole proprietor of all rights, title and interest in and to the copyrights.

43. The Copyrights protect wholly original works that are copyrightable subject matter under the laws of the United States.

44. Plaintiffs never authorized Defendants to reproduce, sell, prepare derivative works, or publicly display the Copyrights or any portion thereof.

45. Defendants copied the Copyrights in the design and build of "The Okie A" and "A Dream to Remember", as seen in the Defendants' Instagram post on May 14, 2021 ("May '21 Instagram").[6]

46. Defendants' May '21 Instagram shows hand-drawn A-Frame plans, a checklist of features for the A-Frame, and a printed packet of photos,[7] including a partially visible photo[8] of Phoenix Rising's front entry, which is a home designed by AFR exclusively. At that time, Phoenix Rising

---

[6] Exhibit 3, Defendants' Instagram Post of May 14, 2021
[7] *Id*.
[8] Exhibit 4, comparison of portion of the image in Exhibit 3 with image of Phoenix Rising. A screenshot the image in Exhibit 3, was edited (contrast was increased, edges sharpened, and "Perspective Warp" used to correct the distorted perspective (i.e. appear as if viewed from a perpendicular, "head-on" angle)).

7

was available for online access and download at AFR's website.

47. Many uniquely identifiable features in Defendants' homes exactly match that photograph. These uniquely identifiable features include: distinctive window mullion patterns (both horizontal and vertical); identical shape and placement of a glowing lampshade bisected by an open "full light" door; a light-colored planter containing small flowers, also bisected by the open door; the angled cantilevered flat roof above, and the reflection in the windows of the sloping A-Frame roof beyond the camera. The contents of the Phoenix Rising interior are identical in both images.

48. Defendants' May '21 Instagram evidences, at a minimum, that Defendants had access to at least a portion of the Copyrights[9] and infringed same.

49. Defendants' May '21 Instagram suggests Defendants' plans were derived directly from the Phoenix Rising images because Defendants' plans are so substantially similar, if not identical, to Phoenix Rising.[10]

50. The kitchen design in Defendants' plans is identical to Phoenix Rising's kitchen.[11] Specifically, the May '21 Instagram shows plans including a partially visible hand-drawn floor plan, which corresponds to the A-Frame elevation in the same image. The hand-drawn floor plan includes a dormer with upper and lower cabinets flanking an empty space in the kitchen, with the center labeled "REF" or "REFS." A window is centered on the right-most cabinets. The rest of the kitchen contains a gas range flanked by upper & lower cabinets opposite an island with a sink and dishwasher, and the butler's pantry contains an empty space labeled "W/D" (Washer/Dryer), an upper & lower cabinet, and a labeled pantry along the exterior wall. A small door leads to an unlabeled & empty closet. There is no refrigerator visible apart from the labeled space in the dormer by the window. All of these features are identical to Phoenix Rising.

51. Defendants' May '21 Instagram also shows a handwritten list of architectural features, and Defendants' plans considered these features.[12] Numerous entries on the list conclude with the phrases: "(picture)" or "like picture" or "to match picture," and these phrases refer to photos of Phoenix Rising. [13] One or more of the entries on the list are Phoenix Rising design features.

---

[9] Exhibit 3, Defendants' Instagram Post of May 14, 2021
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*

8

52. The handwritten list also details, "425k budget all in",[14] suggesting that the construction cost was $425,000, and Defendants profited approximately $500,000, given the sale price of $950,000.00.

53. Defendants' clients also posted images of the Phoenix Rising, further evidencing access to and copying of the Copyrights.

54. Specifically, Braun Thueson and Adam Nelson purchased the Okie-A from Defendants. On August 5, 2022, Braun Thueson's and Adam Nelson's Instagram account (@theokiea) posted a photograph of Phoenix Rising's front elevation. The posts' caption read, "Our inspiration to do a modern mountain A-Frame in Broken Bow, Oklahoma." [15]

55. On August 22, 2022, the same Instagram Account (@theokiea) posted a photos of Phoenix Rising's loft and of "The Okie-A's" loft during its construction. The post's caption read, Inspiration vs Current. The windows of the A-Frame are what create Modern Mountain experience. There will be no shortage of views and windows in this A-Frame."[16]

56. Defendants' Instagram accounts follow the @theokiea account.

57. The Ninth Circuit uses a two-part test for determining whether one work is substantially similar to another. A plaintiff must prove both substantial similarity under the extrinsic test and substantial similarity under the intrinsic test. The extrinsic test is an objective comparison of specific expressive elements between the designs. The intrinsic test (also known as the ordinary observer test) is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works." *Antonick v. Electronic Arts, Inc.*, 841 F.3d 1062 (9th Cir. 2016).

58. "The Okie A" and "A Dream to Remember" houses, designed and built by the Defendants, are both objectively and subjectively substantially similar to the Copyrights.

59. "The Okie A" and "A Dream to Remember" houses, designed and built by the Defendants, include many, if not all, of the original expressive elements of the Copyrights.

60. "The Okie A" and "A Dream to Remember" houses, designed and built by the Defendants, include many, if not all, of the original expressive elements of the Copyright works, including but

---

[14] *Id.*
[15] Exhibit 5, The Okie-A Owner's (@theokiea) Instagram Post of August 5, 2022
[16] Exhibit 6, The Okie-A Owner's (@theokiea) Instagram Post of August 22, 2022

not limited to: strategically located dormers to bring previously unusable floor and head-space and natural light to the side walls; dominant fenestration at the end walls to further increase natural light; rafters set into the roof structure to allow for insulation and further increase usable space; and cap-and-pan metal roof to provide a continuous pattern when seen from above.

61. In particular both "A Dream to Remember" [17] and "The Okie A" [18] homes include at least one or a combination of the following design elements: a solid metal roof, nearly identical front wall fenestration patterns, side-wall dormers of similar size and location, and recessed rafters.

62. "The Okie A" and "A Dream to Remember" houses, designed and built by the Defendants, have a highly similar look, feel and theme to the Copyrights.

63. "The Okie A" and "A Dream to Remember" houses, designed and built by the Defendants, have such a similar look, feel and theme to the Copyrights that that an ordinary reasonable person would conclude that Defendants unlawfully appropriated Plaintiffs' Copyrights.

64. In particular, Plaintiffs only learned about "The Okie A" and "A Dream to Remember" structures because a client (*i.e.* an "ordinary observer") forwarded a posted image of the "The Okie A" that was so similar that the client had mistaken "The Okie A" design as AFR's Copyrighted design.

**Resulting Damages**

65. Defendants' production and sale of the infringing residences and Defendants' deprive and continue to deprive Plaintiffs of the opportunity of expanding its goodwill.

66. By reason of the copyright infringement described above, Plaintiffs are entitled to recover Defendants' profits to the extent Plaintiffs' damages in accordance with 17 U.S.C. § 504(b) do not include Defendants' profits.

67. In the alternative, at the election of Plaintiffs, Plaintiffs are entitled to recover from Defendants statutory damages up to $150,000.00 per copyright infringed for Defendants' willful copyright infringement in accordance with 17 U.S.C. § 504, plus attorneys' fees in accordance with 17 U.S.C. § 505.

68. Defendants' deliberate infringement of the Copyrights irreparably damaged

---

[17] Exhibit 7, Side-by-Side Comparison of Phoenix Rising vs. A Dream to Remember
[18] Exhibit 8, Side-by-Side Comparison of A-Frame Rising "02" Design vs. The Okie-A

Plaintiffs, and Defendants will continue to damage Plaintiffs greatly and irreparably unless enjoined by this Court. In the absence of injunctive relief, Plaintiffs will have no adequate remedy at law. Accordingly, Plaintiffs are entitled to a temporary and permanent injunction in accordance with 17 U.S.C. § 502.

69. As a direct and proximate consequence of the Defendants' actions, the Plaintiffs' business lost value in an amount to be proven at trial in excess of jurisdictional limits.

70. As a direct and proximate consequence of the Defendant's actions, the Plaintiffs' lost profits in an amount to be proven at trial and in excess of jurisdictional limits.

### FIRST CAUSE OF ACTION:

### Copyright Infringement – 17 U.S.C. § 101 et seq.

71. PLAINTIFFS repeat and re-allege all above paragraphs as if fully set forth below.

72. DEFENDANTS have infringed and are infringing the copyright in the Copyright Works by unlawfully reproducing and substantially similar copies of the Copyright Works, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

73. DEFENDANTS' infringements were and are willful, in bad faith, and executed with full knowledge of PLAINTIFFS' copyright, and in conscious disregard for PLAINTIFFS' exclusive rights in the protected Work.

74. The above-described conduct by the DEFENDANTS evidences that DEFENDANTS are willfully infringing PLAINTIFF'S copyright in the Copyright Works by reproducing and creating derivative works of the Copyright Works without permission in violation of the Copyright Act, 17 U.S.C. § 106.

### SECOND CAUSE OF ACTION:

### UNJUST ENRICHMENT

75. PLAINTIFFS repeat and reallege all preceding paragraphs as if fully set forth herein.

76. PLAINTIFFS have invested significant time, effort, and resources into creating unique architectural designs, plans, and trade secrets (the "Design Works"), which DEFENDANTS have misappropriated for their own benefit without permission.

77. DEFENDANTS knowingly used PLAINTIFFS' Design Works, including original architectural elements, to create and profit from the construction and sale of residential structures, including "The Okie A" and "A Dream to Remember," without compensating PLAINTIFFS.

78. By using and profiting from the Design Works, DEFENDANTS have been unjustly enriched at PLAINTIFFS' expense. The benefit DEFENDANTS received was conferred through the unauthorized use of Plaintiffs' intellectual property, which DEFENDANTS knew or should have known rightfully belonged to PLAINTIFFS.

79. As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFFS have suffered economic harm, and DEFENDANTS have gained a substantial benefit unjustly.

80. PLAINTIFFS seek restitution of all profits and benefits DEFENDANTS received from the unauthorized use of the Design Works to prevent unjust enrichment and to compensate PLAINTIFFS for their losses.

## THIRD CAUSE OF ACTION

## FALSE DESIGNATION OF ORIGIN – 15 U.S.C. § 1125(a)

81. Plaintiffs repeat and re-allege all preceding paragraphs as if fully set forth herein.

82. The Lanham Act provides a cause of action for trade dress infringement. Lanham Trade-Mark Act, § 43(a), 15 U.S.C.A. § 1125(a).

83. Plaintiffs are the creators, authors, and owners of distinctive architectural designs and trade dress including unique design elements, patterns, and architectural configurations embodied in the A-Frame Rising plans and designs.

84. Plaintiffs' trade dress includes the following distinctive architectural elements, which, when combined, create a unique and recognizable appearance associated with Plaintiffs:

a. **Distinctive Framing and Open Centerline Design**. Black metal vertical and horizontal framing on the front and rear walls, with large sections of negative space predominantly filled with windows. Notably, the absence of a center column in these walls creates an open and streamlined centerline, diverging from the traditional A-Frame design commonly used by others.

b. **Playful Window Patterns**. A Mondrian-like arrangement of windows on the end walls and dormers, emphasizing artistic design over functional utility. These window

patterns extend to nearly fill the entirety of the gabled ends of the A-Frame and are an integral visual feature of Plaintiffs' designs.

   c.  **Unique Dormer Design.** Dormers with a deliberate and visually distinctive design, including variations in shape, size, location, and geometry. Each dormer is unique, yet they maintain consistent proportions and alignment, such as the lower dormers consistently meeting the height of the second floor.

   d.  **Flat, Eaveless Dormer Roofs.** Minimalist dormer roofs without eaves, contributing to a clean and modern geometry that contrasts with the visibly sloped dormer roofs typical of other A-frame designs.

   e.  **Specific Roof Pitch**. A roof pitch of 25:12, creating a balanced aesthetic distinct from the shallower, wider appearance of traditional A-frame designs or the steeper, narrower designs of more modern Scandinavian styles.

85. The distinctiveness of Plaintiffs' trade dress arises from the combination of these elements, which together form an unmistakable visual identity associated with Plaintiffs' designs.

86. Plaintiffs' trade dress is well-recognized in the architectural and construction communities and have acquired distinctiveness through consistent commercial use, public recognition, and widespread exposure in industry publications, media, and social media platforms.

87. Plaintiffs consistently maintained the trade dress in architectural designs, and the trade dress remains a core, unaltered feature of their projects, even as other elements of the structures may vary, such as interior layouts, materials, or additional modifications.

88. Upon information and belief, Defendants used Plaintiffs' trade dress to create architectural plans and build residential structures, specifically "The Okie A" and "A Dream to Remember," that are substantially similar to Plaintiffs' trade dress.

89. Defendants have marketed, advertised, and sold these residential structures in interstate commerce, including on social media and other commercial platforms, falsely designating the origin of the architectural designs as their own original work, rather than identifying them as originating from Plaintiffs.

90. Defendants are passing off their structures as Plaintiffs' Design Works by virtue

13

of substantial similarity, leading to confusion on part of potential customers.

91. Defendants' unauthorized use of Plaintiffs' distinctive trade dress in connection with the sale and marketing of residential structures constitutes a false designation of origin, misrepresentation, or misleading description of fact that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants' structures with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' residential structures by Plaintiffs.

92. Defendants' actions, including the unauthorized use of the Design Works and the passing off of Plaintiffs' designs as Defendants' own, have caused and are likely to continue causing confusion among consumers, clients, and the general public, who may reasonably believe that Defendants' structures are created, designed, or authorized by Plaintiffs.

93. Defendants' conduct has been willful, intentional, and undertaken in bad faith with full knowledge of Plaintiffs' rights in the Design Works, and with the intent to unfairly benefit from the goodwill and reputation established by Plaintiffs.

94. As a direct and proximate result of Defendants' false designation of origin, Plaintiffs have suffered and will continue to suffer irreparable harm to their reputation, goodwill, and business, and are entitled to an award of damages, including but not limited to, Defendants' profits attributable to the unauthorized use of Plaintiffs' Design Works, any actual damages sustained by Plaintiffs, and the costs of this action.

95. Plaintiffs are further entitled to a preliminary and permanent injunction to prevent Defendants from further misrepresenting the origin of their designs and engaging in any other activities that constitute false designation of origin, pursuant to 15 U.S.C. § 1116(a).

96. Plaintiffs are entitled to an award of attorneys' fees and costs under 15 U.S.C. § 1117(a) due to the willful and intentional nature of Defendants' false designation of origin and bad-faith conduct.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF UNFAIR COMPETITION LAW - BUSINESS AND PROFESSIONS CODE SECTION 17200 et seq**

97. Plaintiffs repeat and re-allege all preceding paragraphs as if fully set forth herein.

98. In the course of their business, Defendants have used and marketed Plaintiffs'

Design Works to build at least two houses, including "The Okie A" and "A Dream to Remember," which are substantially similar to Plaintiffs' original designs.

99. Defendants made knowingly false representations regarding the origin and authorship of the architectural designs used in their residential structures, including, but not limited to, representing or implying that these designs were original to Defendants and created by them.

100. Defendants falsely represented the architectural designs as their own original work, constituting an unlawful act under the California Business and Professions Code section 17200, as it involves making false representations in the course of their business.

101. Defendants further engaged in deceptive business practices under the California Business and Professions Code section 17200 by omitting material facts necessary to make their representations truthful, thereby creating a misleading impression about the origin and authorship of the architectural designs.

102. Defendants also violated the California Business and Professions Code section 17200 by representing that their goods (the residential structures) have characteristics, uses, benefits, or origins that they do not actually possess, as these architectural designs were not created by Defendants but are Plaintiffs' copyrighted works.

103. By misrepresenting that their residential structures are of a particular standard, quality, or style as distinctive, original designs, Defendants engaged in practices that are likely to deceive consumers, in violation of the California Business and Professions Code section 17200.

104. Defendants' actions were taken knowingly and intentionally, with the purpose of deceiving consumers and the public as to the origin, authorship, and quality of the architectural designs used in their structures, which has allowed Defendants to unlawfully benefit from Plaintiffs' goodwill and reputation.

105. Defendants have engaged in unfair competition within the meaning of California Business and Professions Code section 17200 *et seq.* because Defendants' conduct is fraudulent, unfair and illegal as herein alleged. Defendants' conduct was substantially injurious to Plaintiffs. Defendants' wrongful business acts constituted, and constitute, a continuing course of conduct of unfair competition since said Defendants are charging for a service not actually provided and

advertising in a manner that is likely to deceive the public. Defendants' business practices are unlawful. The practices are fraudulent because they were likely to deceive consumers into believing that the service charge is required, and also likely to deceive consumers about the cost of the monthly charges. Defendants' business acts and practices, as alleged herein, have caused injury to Plaintiffs.

106. Plaintiffs are informed and believe that Defendants' unfair acts as described above are a serious and continuing threat to Plaintiffs' and to the public. If Defendants continue to misrepresent the DESIGN WORKS as their own product, Plaintiffs and the public will suffer further immediate and irreparable injury, loss, and damage. In the absence of a temporary restraining order and preliminary and permanent injunctions as prayed for below, Defendants will continue to engage in unfair business practices. Unless restrained by this court, Defendants will continue wrongful conduct in violation of section 17200 of the Business and Professions Code, and Plaintiffs will have no adequate remedy at law.

107. As a result of Defendants' deceptive trade practices, Plaintiffs have suffered damages, including lost profits, damage to business reputation and goodwill, and other economic harm, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS and in favor of Plaintiffs as follows:

a. An award for actual damages to be determined at trial;
b. An award for statutory damages;
c. An award for PLAINTIFFS' lost profits to be determined at trial;
d. Restitution to be determined at trial;
e. Disgorgement of DEFENDANTS' ill-gotten gains to be determined at trial;
f. An injunction preventing DEFENDANTS from further use or disclosure of PLAINTIFFS' trade secrets;
g. An award of attorneys' fees, expert fees, and all other expenses reasonably incurred in the prosecution of this case;
h. An award of punitive and exemplary damages; and

i. Such other relief as this Court deems just and appropriate.

Dated this 4th day of February, 2025.    Respectfully Submitted,

**MOBO LAW, LLP**

Cameron D. Bordner
Chad A. Pace
Attorneys for Plaintiffs